## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:19-cr299 (KAD) |
| | : | |
| v. | : | |
| | : | |
| EDWARD MICHAEL PARKS, | : | |
| a.k.a. "Lee" and "Trouble" | : | December 7, 2022 |

### GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE
### EVIDENCE OF DEFENDANT'S GANG AFFILIATION

The government respectfully gives notice to the Court and to counsel that it intends to elicit testimony regarding the defendant's affiliation with the Bloods street gang. The defendant has been a member of the "Gangsta Killa Bloods" (as evidenced by the "G" "K" "and "B" tattooed on his face) and has been designed by prison officials as being associated with the "G-Shine" Bloods, both of which are subsets within the United Blood Nation.

During its case-in-chief, the government will introduce evidence that the defendant kidnapped and murdered Damian Connor and Tamar Lawrence. R.C., J.C., and Devonte Williams were all witnesses to the kidnapping and murders. The government's evidence will show that the defendant kidnapped and killed Connor and Lawrence in retaliation after E.G. and another individual, friends of Connor and Lawrence, stole firearms from the defendant. The government will also introduce evidence that Edward Parks murdered Devante Williams to prevent him from informing law enforcement about the murders of Connor and Lawrence.

The government will introduce evidence that the defendant, R.C., Williams, and K.L. were all members of the Bloods street gang. J.C. will testify that he was aware that the defendant was a member of the Bloods. He will also testify to seeing the defendant and R.C. exchange handshakes associated with the Bloods. J.C. will further testify that Williams was a member of a different Blood subset, and that R.C. and Williams were subordinate to the defendant in the gang hierarchy.

As for R.C., the government anticipates that he will testify that he was an affiliate of the Blood street gang, and that the defendant was attempting to recruit him to join as a full member around the time of the charged offenses.

The government anticipates that K.L. will testify that he was a member of the Bloods with a lower rank than the defendant. He will testify that the day after the homicides he received a call telling him to go to Connecticut to pick-up the defendant and drive him back to North Carolina. K.L. got in the car, drove straight to Connecticut, picked up the defendant, and brought him immediately back to North Carolina.

The gang association will explain, in part, the willingness of R.C., Williams, and K.L. to participate in the events described above. To put their actions in context (that is, willingness to assist in the charged offenses), it will be important for the jury to understand the relationships between R.C., Williams, K.L., and the defendant, and that R.C., Williams and K.L, were/are members of the same street gang but of a lower rank than the defendant. Without this critical information, the jury will be left wondering why R.C., Williams, or K.L. would assist the defendant in the manner they

did. Further, the Blood connection goes directly to the defendant's motive for committing the alleged murders – to avenge the disrespect bestowed upon him when E.G. and another individual stole his firearms in front of fellow gang members. The gang association also goes to R.C.'s and K.L.'s credibility and the weight of their respective testimony. Accordingly, evidence about the defendant's membership in the Bloods is both relevant and admissible under Rule 401.

Moreover, there is no basis to exclude this evidence under Rule 403. Other act evidence does not create unfair prejudice where the other conduct is no more serious or sensational than the charged crime. *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000); *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (admitting evidence of prior narcotics transactions in narcotics case where other acts evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged") (internal quotation marks omitted) (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (1990))). Moreover, evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Kadir*, 718 F.3d 115, 122 (ed Cir. 2013) citing [Figueroa], *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). Evidence of the defendant's gang affiliation is not unduly prejudicial. The Indictment in this case charges the defendant with committing three homicides. Thus, evidence of his gang affiliation is not "any more sensational or disturbing" than the crimes with which he is charged. *Pitre*, 960 F.2d at 1120. Accordingly, the probative value of the evidence is not at all

outweighed, let alone substantially outweighed, by the risk of unfair prejudice under Rule 403.

To the extent the defendant's membership constitutes other bad acts evidence, the government is not offering it to show propensity, i.e., that the defendant committed the murders because gang members kill people. Rather, the evidence is admissible for a proper purpose under FRE 404(b), specifically, to establish important background information and the relationships between crucial witnesses and the defendant. The Second Circuit has upheld the admission of gang membership evidence in similar contexts. *See United States v. Felder*, 993 F.3d 57, 78 (2d Cir.) ("[A]ssuming any of the challenged photographs"—which the defendant argued showed men wearing gang colors and making gang signs—"qualify as bad acts evidence, such evidence may be admitted under this court's inclusionary approach to explain or demonstrate a criminal relationship and to help the jury understand the basis for conspirators' mutual trust."), *cert. denied*, 142 S. Ct. 597 (2021); *United States v. Williams*, 930 F.3d 44, 63 (2d Cir. 2019) ("Intent and opportunity are proper purposes under Rule 404(b), and courts routinely admit evidence of gang membership in circumstances like these where the evidence is relevant for a proper purpose."); *United States v. Ramsey*, 2021 WL 5022640, at *4 (2d Cir. Oct. 29, 2021) (upholding admission of gang evidence because "[t]he district court reasoned that the 'other act' evidence was offered for a proper purpose relevant to disputed issues as it helped show relationships within the gang, as well as Pagett's motivation for removing Johnson"), *cert. pet. filed*, Case No. 21-1291 (Mar. 24, 2022). Thus, evidence about the

defendant's gang membership should be admitted. Any cognizable risk that the jury would consider this evidence for improper propensity purposes can be addressed with a limiting instruction. "[T]he law recognizes a strong presumption that juries follow limiting instructions." *United States v. Snype*, 441 F.3d 119, 129-30 (2d Cir. 2006).

Accordingly, evidence of the Bloods, its subsets, and defendant's and witnesses membership and ranks should be admitted.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Nathaniel J. Gentile*


NATHANIEL J. GENTILE
Federal Bar No: ct28860
A. REED DURHAM
ASSISTANT U.S. ATTORNEYS
SETH GARBARSKY
SPECIAL ASSISTANT U.S. ATTORNEY
157 Church Street., 25th Floor
New Haven, CT 06510
Tel.: (203) 821-3700

,

**CERTIFICATION**

I hereby certify a copy of the foregoing was filed electronically with the court and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Nathaniel J. Gentile
NATHANIEL J. GENTILE
ASSISTANT UNITED STATES ATTORNEY