# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:19-cr299 (KAD) |
| v. | : | |
| EDWARD MICHAEL PARKS, | : | |
| a.k.a. "Lee" and "Trouble" | : | December 7, 2022 |

## GOVERNMENT'S TRIAL MEMORANDUM

In accordance with the Court's order of May 12, 2022, the government respectfully submits this trial memorandum to outline the nature of the case, the charges, and likely issues to arise during trial.

**Nature of the case.** The defendant is charged with two counts of kidnapping resulting in death and one count of witness tampering by killing. Specifically, the indictment charges:

- Count One: Kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1).

- Count Two: Kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1).

- Count Three: Witness tampering by killing, in violation of 18 U.S.C. § 1512(a)(1)(C) and 1512(a)(3)(A).

**Witnesses and expected proof.** The Government anticipates calling civilian witnesses, law enforcement witnesses from the Hamden Police Department ("HPD"), New Haven Police Department ("NPD"), and the Federal Bureau of Investigation ("FBI"). The Government further plans to call the medical examiners who performed

1

the autopsies, expert forensic examiners (including DNA, fingerprint, and ballistics experts), a computer and telephone forensic examiner, and a cell site expert, among other witnesses, to establish the following:

On the morning of November 17, 2015, an employee of the Broadmoor Apartments at 676 Mix Avenue in Hamden, Connecticut alerted the Hamden Police Department ("HPD") to two deceased men in a blue Nissan Maxima. The car was running with music playing. The rear passenger door to the vehicle was unlocked and both victims, subsequently identified as Damian Connor, a.k.a. "Chicken," and Tamar Lawrence, appeared to have been shot. Connor was found dead in the driver's seat and had blood coming out of his left ear, and Lawrence was slumped across the back seat with blood on his hands, arms, and upper torso. Law enforcement did not find any identification, money, or phones on either victim.

Autopsies revealed that both victims had died from gunshot wounds to the head. Projectiles recovered from their bodies were analyzed and were all found to be .38 caliber projectiles. A Hamden resident who was out walking his dog found Tamar Lawrence's cellular phone in front of 56 Bowen Street, which is approximately nine minutes away by car from where the bodies were found.

On the night of November 16, 2015, Devante Williams, a.k.a. "Breezy," was shot and killed at 49 Sherman Court in New Haven. Witnesses reported hearing gun shots and two neighbors said they saw a black male being chased by another black male who had dreadlocks and wore a somewhat distinctive coat (consistent with the defendant's appearance that evening). Upon arriving to the scene just before 9:00

2

p.m., officers located a jacket and hat on the ground near a small pool of blood in an empty parking space in the rear lot of Sherman Court. The body of Devante Williams was found a distance away, behind the building. Four fired .45 caliber cartridge casings were located on scene, as well as one live .45 caliber round of ammunition. Williams was pronounced dead at approximately 9:19 p.m. A subsequent autopsy revealed that the cause of death was gunshot wounds to the head and torso. Two projectiles were found in Williams' body, one of which could be identified as a .45 caliber projectile.

Damian Connor's cell phone was found at the scene of Williams' murder with the SIM card removed. The two locations where the three victims' bodies were found are approximately fifteen minutes apart by car.

In sum, civilian/cooperating witness testimony will establish that on the evening of November 16, 2015, the defendant, a high-ranking member of the Bloods street gang visiting from North Carolina, was offering firearms for sale in a bedroom of a private residence on Shelton Avenue in New Haven. Several people were present in the residence, and observed the defendant lay out multiple firearms on a bed to display for sale. One witness described that the defendant was armed during this time with a .38 caliber revolver and a semi-automatic firearm, which he kept in the front pockets of his sweatshirt, so that they were visible to others in the room.

E.G. and another man stole two firearms that the defendant was attempting to sell on November 16th. In response, the defendant became angry and ordered Connor and Lawrence to call E.G. and the second man to tell them to return the

3

firearms or pay for their purchase. The defendant would not let Connor or Lawrence leave until E.G. returned the firearms or paid for them. Witnesses made multiple telephone calls to try to convince E.G. to return the firearms and/or pay for their purchase, but E.G. refused.

As a result, the defendant kidnapped Connor and Lawrence (both friends of E.G.) to persuade E.G. and the second man to return the firearms or pay him. Devante Williams, R.C and J.C., were also present and assisted the defendant in taking cash, cellular telephones, marijuana, and a key fob to a Nissan Maxima from the pockets of Connor and Lawrence. R.C. collected their cell phones and some drugs, which R.C. gave to the defendant.

The defendant, R.C., Connor, and Lawrence got into the Nissan Maxima and drove to Hamden. J.C. and Williams followed the Maxima in a silver Volkswagen. The passengers in the Volkswagen lost sight of the Maxima and stopped at a residence near the Hamden murder scene. While at this residence, J.C. called the defendant and that the defendant said he was going to "take care of them."

Meanwhile, the defendant, R.C., Connor, and Lawrence made a brief stop. Connor got out of the car to get more money to pay the defendant. While Connor retrieved the money, everyone else remained in the car – it was clear that the defendant would not allow them to leave. When Connor returned, they drove to the parking lot behind the Broadmoor apartments. Around this time, J.C. and Williams also drove from the nearby residence to the Broadmoor apartment parking lot in the Volkswagen. J.C. and Williams parked a few spaces away from the Maxima.

4

J.C. heard two to three gunshots and saw a muzzle flash. J.C. also saw the defendant on the passenger side of the Maxima wiping something down. J.C. also saw R.C. run to the Volkswagen that J.C. was driving and then drop an item and pick it up before entering the Volkswagen. The defendant also got into Volkswagen. J.C. pulled out of the parking lot, and the defendant instructed him to "drive normal." The defendant told J.C. to wipe down the victims' phones and throw them out of the car near the intersection of Dixwell and Benham.

J.C. pulled over at the intersection of Shelton Avenue and Munson Street in New Haven where he got out of the car and returned to the residence at Shelton Avenue. Meanwhile, the defendant told R.C. to drive so they (the defendant, R.C., and Williams) could go smoke marijuana. R.C. then drove to Sherman Court in New Haven, with the defendant and Williams. There, all three started to get out of the car. R.C. heard one shot and then several clicks. R.C. then saw the defendant pull out a second pistol. Williams yelled that he had been shot and began to run away. the defendant chased after Williams. R.C. lost sight of them but heard additional shots. The defendant then returned to the vehicle carrying the gun and told R.C. to leave. He told R.C., "I know you not going to say anything."

After leaving the scene, R.C. stopped the Volkswagen and the defendant got out and returned to the residence at Shelton Avenue. R.C. drove to the store briefly and then also returned to the residence at Shelton Ave. J.C., who had remained at Shelton Ave, spoke to the defendant when he returned, who said "I had to take care of your boy, too . . . Breezy [Williams]. He seen too much." After the defendant

5

returned to the residence, he used the bathroom and J.C. could smell a strong order of bleach coming from the bathroom. Later, the defendant told J.C. that he shot Williams in the head. The defendant gave R.C. a bag and instructed him to throw it out. R.C. threw the bag in a dumpster in a nearby church parking lot

K.L., a Bloods member who was living in Raleigh, North Carolina received a call from a family member in the evening hours of November 16, 2015 and was told to pick up "Trouble" (the defendant) in Connecticut and return him to Raleigh, North Carolina. K.L. said that he drove directly to Connecticut, picked up "Trouble" (who had packed his belongings) and returned to North Carolina. According to K.L., "Trouble" is a high-ranking Bloods member. K.L.'s understanding was that "Trouble" needed to attend child support court in North Carolina, which was why he had to return, but the two did not further discuss his reasons for returning during the trip back. K.L. drove directly to Connecticut and then turned around and drove immediately to North Carolina.

The government will introduce expert forensic evidence at trial. Over twenty samples were swabbed from the two cars and tested for DNA. A human hair was collected from the front passenger seat of the Nissan Maxima in which the victims were found and the defendant could not be eliminated as the source of the DNA profile with an expected frequency of less than 1 in 7 billion in the African American, Caucasian, and Hispanic populations.

A swab was also taken of the rear driver's side interior door handle of the Nissan Maxima, which showed that R.C. was included as a contributor to the mixture

6

of DNA profiles found at that location at an expected frequency of 1 in 4,000 in the African American population, 1 in 4,400 in the Caucasian population, and 1 in 6,900 in the Hispanic population.

Law enforcement seized the Volkswagen five days after the homicides. Investigators identified and collected blood from the rear interior passenger side window. Forensic testing showed that Tamar Lawrence was consistent with being the source of the DNA profile from the blood at an expected frequency of less than 1 in 7 billion in the African American, Caucasian, and Hispanic populations. Connor could not be eliminated as a potential contributor to a mixture of DNA profiles found on a cellular phone sim card left at the scene of the Williams' murder at a rate of 1 in 34 in the African American population, 1 in 26 in Caucasian population and 1 in 54 in the Hispanic population.

Finally, a swab was taken of the interior rear driver's side door handle of the silver Volkswagen. R.C. was included as a contributor to the DNA profile in the mixture at an expected frequency of approximately 1 in 150 in the African American population.

The government presently anticipates that it will also introduce cell phone extractions, call detail records, and expert cell site cell site analysis to prove its case. Call detail records will reveal the various communications between the witnesses and with the defendant.

Cell site analysis will reveal the locations of the phones of certain witnesses during relevant times on November 16 through November 18, 2015. That analysis

will reveal, among other things, that on November 16, 2015 between approximately 7:00 p.m. and 7:30 p.m., Connor's two telephones hit off cell towers in the area of Shelton Avenue in New Haven. At proximately 8:14 p.m., one of Connor's phones hit off a tower near the Hamden murder. It remained in this area for the remainder of the evening. Connor's second phone continued to have activity in the general area of Shelton Avenue in New Haven and the New Haven murder scene. The last mappable activity on this phone was at approximately 10:07 p.m. on November 16, 2015.

On November 16, 2015, R.C.'s phone hit off a tower in the area of Sherman Avenue in New Haven at approximately 7:24 p.m. At 7:52 p.m. R.C.'s phone had moved north of Sherman Avenue in New Haven. At 8:23 p.m., R.C.'s phone hit off a tower north of Sherman Avenue using a sector facing Hamden (as described below, J.C.'s phone hit off this same tower and sector at approximately the same time). At 8:54 p.m. and 9:00 p.m., R.C.'s phone hit off a tower near Gateway Community College in New Haven (approximately 4,000 feet from the New Haven murder scene). At 9:22 p.m. and 11:10, R.C.'s phone hit off a tower in the Shelton Ave area of New Haven (the same tower and sector it was using at 7:24 p.m.).

J.C.'s phone was in the area of Shelton Ave between 7:00 p.m. and 7:24 p.m. J.C.'s phone travelled north and used a tower near the Hamden murder scene between 8:10 p.m. and 8:14 p.m. J.C.'s phone moved south and used the tower in the area of Shelton Avenue between 8:34 p.m. and 9:14 p.m. J.C.'s phone continued to use this tower and sector between 10:30 p.m. and 11:00 p.m.

8

The defendant's phone hit off a tower near Shelton Ave in New Haven at 7:17 p.m. Beginning at 7:50 p.m. His phone hit off a tower near the Hamden/New Haven line near the Hamden murder scene between 8:01 p.m. and 8:14 p.m. This includes multiple calls with J.C.'s phone during this time period. The defendant's phone hit off a tower near the Hamden murder scene. At 8:38 p.m., his used the tower near Gateway Community College that is approximately 4000 ft. from the scene of the New Haven murder. At 8:40 p.m., the defendant's phone used an adjacent tower. At 11:10 p.m., the phone was back Shelton Avenue. The next day, November 17, 2015, at 3:11 p.m., the defendant's phone began traveling south to North Carolina.

Lastly, cell site analysis of K.L's phone reveals that it traveled from North Carolina to Connecticut at approximately 3:00 a.m., then back to North Carolina immediately. At 1:18 a.m. on November 18, 2015, K.L.'s phone began hitting off towers in North Carolina.

**Expected legal issues.** The government has filed several notices and motions in limine and notices, including:

- Notice of intent to use a summary chart;
- Notice of intent to introduce evidence of the defendant's gang affiliation;
- Motion in limine regarding use of the defendant's criminal convictions;
- Motion in limine regarding use grand jury testimony as substantive evidence; and
- Motion in limine regarding introduction of testimony regarding the seizure of the defendant's phone.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

/s/

NATHANIEL J. GENTILE
ANDREW REED DURHAM
ASSISTANT U.S. ATTORNEYS
FEDERAL BAR NO. ct28860
SETH GARBARSKY
SPECIAL ASSISTANT U.S. ATTORNEY
157 CHURCH STREET, FLOOR 25
NEW HAVEN, CT 06510
203-821-3700

## CERTIFICATE OF SERVICE

I hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/

NATHANIEL J. GENTILE
ASSISTANT U.S. ATTORNEY