UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:19-cr-299 (KAD) |
| | : | |
| v. | : | |
| | : | |
| EDWARD MICHAEL PARKS, | : | |
| a.k.a. "Lee" and "Trouble" | : | December 29, 2022 |

## GOVERNMENT'S NOTICE OF 404(b) EVIDENCE

The Government respectfully gives notice to the Court and to counsel regarding evidence of uncharged misconduct which may be elicited during the government's case-in-chief. The Government anticipates four areas of testimony that either fall under Rule 404(b) or might arguably be considered 404(b) evidence. All of this anticipated evidence would be offered for permissible reasons, which relate directly to the elements of the offenses charged and are not unfairly prejudicial when weighed against the charged conduct.

**I.      THE GOVERNMENT'S EVIDENCE**

First, the Government will offer the defendant's own statement that he did not want to "go back to jail." For context, this testimony will be elicited from T.C., who the government will call as a witness. At the time of the charged offenses T.C. was in a relationship with the defendant, Edward Michael Parks. She will testify that during their relationship the defendant would travel back and forth from North Carolina, and that he had been in North Carolina and recently travelled up to Connecticut before the night of the murders. She will also testify about her

observations at 21 Shelton Avenue in New Haven on the date of the murders, as well as to her interactions with the defendant. She will testify regarding people who were present, her observation of firearms, and that the defendant and others left the apartment in the evening. She will testify that the defendant returned after a period of time and began packing his belongings to leave. When T.C. questioned the defendant as to why he was leaving after having recently arrived from North Carolina, he told her that he "had to leave," that he had only recently gotten out of jail and he "could not go back to jail." T.C. will also testify that the following afternoon people with whom she was not familiar came, in a car with out of state plates, to pick up the defendant. The defendant then left New Haven and she never saw him again.

Second, the government will introduce evidence of the defendant's interstate firearms trafficking on the night of the three murders. This evidence will be introduced through the testimony of J.C. and E.G. J.C. will testify to the series of events that led to the defendant kidnapping and murdering Damian Connor and Tamar Lawrence, and then murdering Devante Williams to prevent him from talking to law enforcement about what he had witnessed. J.C. was present when the defendant was engaged in the attempted sale of firearms inside of 21 Shelton Avenue in New Haven. J.C. was aware, based on statements from the defendant, that the defendant was making trips back and forth to North Carolina to procure the firearms that he was selling in New Haven. E.G., another witness who will be called to testify, went to 21 Shelton Avenue to purchase a firearm from the defendant, but instead

stole two guns and left the apartment.  This theft set in motion the kidnapping and subsequent murders of Damian Connor and Tamar Lawrence.

Third, the Government will introduce evidence that the defendant was charged with a federal firearm offense in 2013 (prior to the offense conduct in this case), but that the charges were dismissed. Following his arrest, the defendant filed a motion to suppress, which was granted, and the charges were ultimately dismissed.  The Government contemplates introducing the fact that the defendant was charged federally based on his possession of firearms to establish the defendant's knowledge that firearms offenses are investigated and charged federally. This is specifically relevant to count three of the indictment, which charges the defendant with witness tampering by killing.  Under that count, the Government is required to establish that Devante Williams was killed in order to prevent him from speaking with a federal law enforcement officer.  To that end, it is necessary to establish the defendant's awareness that gun crimes are often charged federally.

Lastly, the Government will introduce evidence that was seized from the defendant during his arrest and incarceration for offenses that post-date the offense conduct in this case.  In January of 2016, the defendant was arrested in Raleigh, North Carolina for, among other things, possession of firearms.  During that arrest, a cellular telephone was seized from the defendant.  Law enforcement in North Carolina sought a search warrant and conducted an extraction of the contents of the seized phone.  The phone contains information, specifically contact information, that is relevant to this case.  To present such evidence, the Government may need to call

the arresting officer to testify to his seizure of the phone from the defendant, as well as the detective that conducted the extraction.

## II. STANDARD

The above evidence is relevant under Rule 401 and admissible under Rule 404(b). Moreover, there is no basis to exclude this evidence under Rule 403. The Second Circuit follows the "inclusionary" approach to admissibility of extrinsic acts under Rule 404(b). *See United States v. Inserra,* 34 F.3d 83, 89 (2d Cir. 1994). This approach permits evidence of other acts to be used if it is relevant for some other purpose than to show a probability that the defendant committed the alleged crime because he or she is a person of bad character. *See, e.g., United States v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998); *United States v. Benedetto,* 571 F.2d 1246, 1248 (2d Cir. 1978). For example, the Second Circuit has upheld the admissibility of other acts evidence where such evidence was "relevant as background information to make the story of the crimes charged complete and to enable the jury to understand how the illegal relationship between the co-conspirators developed." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996). In addition, other acts evidence may be admitted where it is "intertwined" with the evidence regarding the charged offenses. *See United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997); *Benedetto*, 571 F.2d at 1250. Other act evidence does not create unfair prejudice where the other conduct is no more serious or sensational than the charged crime. *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000); *United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir. 1992) (admitting evidence of prior narcotics transactions in narcotics case where other acts evidence

"did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged") (internal quotation marks omitted) (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (1990))). Moreover, evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Kadir*, 718 F.3d 115, 122 (ed Cir. 2013) citing [Figueroa], *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

### III.     ARGUMENT

All the evidence above satisfies Rule 404(b) and Rule 403. It is offered for a proper purpose other than to show propensity and it satisfies that probative-prejudice balancing test of Rule 403.

Regarding the defendant's statement that he "cannot go back to jail," the Government intends to offer this testimony to show consciousness of guilt in the immediate aftermath of the murders. The defendant's statement is highly probative because it shows he was aware that he had recently committed a criminal act. The statement will establish knowledge of the charged crimes, such that he felt the need to flee, as well as identity, in that his consciousness of guilt suggests his involvement in the offense conduct. These are all proper purposes under Rule 404(b).

Moreover, this statement is not unfairly prejudicial. The Indictment in this case charges the defendant with killing three victims. The fact that the defendant may previously have been in jail for an unnamed offense is not "any more sensational or disturbing" than the crimes with which he is charged. *Pitre*, 960 F.2d at 1120. In fact,

the defendant's statement pales in comparison to the charged conduct. Accordingly, the probative value of the evidence is not at all outweighed, let alone substantially outweighed, by the risk of unfair prejudice under Rule 403.

The testimony about the defendant's interstate trafficking of guns on the night of the charged offenses is also admissible. To begin, this evidence would not offend (or even implicate) Rule 404(b). "[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime of trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted). Such evidence "constitute[s] direct evidence of the charged offense," United States v. Mavashev, 455 F. App'x 107, 111 (2d Cir. 2012), and may be admitted for that reason even if it concerns bad acts pre-dating the charged crime, *see United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010).

Testimony about the defendant's interstate trafficking of firearms on the night of the charged offenses falls in this category. The defendant's interstate firearm trafficking is inextricably linked to the charged conduct because it forms the basis for the entire series of events that unfolded on November 16, 2015. The defendant's gun trafficking led to the theft of his guns, which, in turn, led to decision to kidnap and kill Damian Connor and Tamar Lawrence. Those killings then led to the defendant killing Devante Williams a short time later.

Understanding the three charged offenses requires the background and context of the preceding gun sale. That the defendant brought the firearms up from North Carolina for sale is part of the story, as to why multiple people met at 21 Shelton Avenue to see the guns that the defendant had for sale. It explains why E.G. and Damian Connor and Tamar Lawrence were present at 21 Shelton Avenue on the night in question. Likewise, it offers some explanation for why the defendant would be so angry after the theft of two firearms that he took the actions that he did. Telling the story of the three charged killings without this context would be to leave the story notably incomplete.

Even if this evidence could be regarded as falling under Rule 404(b), it would still be admissible. As noted above, the Second Circuit "follow[s] an inclusionary rule, allowing the admission of [bad acts] evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *Carboni*, 204 F.3d at 44. Here, the Government would offer this evidence not to show the defendant's criminal propensity, but for the permissible purposes explained above, and the evidence is relevant for those purposes. Additionally, the fact that the guns were being transported from North Carolina to Connecticut is relevant to count three of the Indictment, where the government must establish a reasonable likelihood that Devante Williams would have spoken to a federal law enforcement officer. That the defendant was engaged in the interstate trafficking of firearms, which led to multiple deaths, would make it more likely that the defendant's conduct would attract

the attention of federal authorities, as opposed to only local law enforcement. In other words, it goes directly to one of the elements of a charged offense.

Likewise, evidence regarding the defendant's 2013 arrest for gun possession, would not be offered to show propensity, but rather, knowledge of the fact that gun crimes are investigated and prosecuted federally. The defendant's knowledge that gun crimes are often charged federally is important evidence for the jury to consider in determining whether the defendant believed there was a reasonable likelihood that Devante Williams would have spoken to a federal law enforcement officer had he not been executed. Moreover, any marginal prejudice from the fact that he was arrested in that case and where the charges were ultimately dismissed, can be further minimized with an appropriate limiting instruction. *See United States v. Bermudez*, 529 F.3d 158, 162-63 (2d Cir. 2008) (emphasizing the use of limiting of instructions to "minimize any potential prejudicial effect").

Finally, testimony regarding the seizure of evidence from Parks' possession during his 2016 arrest and subsequent incarceration is offered for a permissible purpose; that is, to establish that the defendant possessed a cellular telephone that contained relevant contacts and that law enforcement obtained a known DNA sample from the defendant which matched DNA in the victims' car. At this time, the parties are in discussion regarding stipulations that may avoid the need to call the witnesses related to the seizure and extraction of the cellular telephone. The parties are also discussing a stipulation that would eliminate the need to call a witness relative to the seizure of the defendant's DNA. . To the extent the Government is required to present

testimony regarding the seizure of the defendant's cellular telephone, it will attempt to sanitize the testimony to the extent possible. That is, the law enforcement officer would be expected to testify that he had contact with the defendant and seized the cellular telephone from his possession without giving specifics of the arrest. Likewise, a search warrant was obtained for the defendant's DNA, while he was in custody in North Carolina. Similarly, testimony regarding the collection of the defendant's DNA would be sanitized and would not reference the defendant's incarceration on unrelated charges.

### III. CONCLUSION

As the Supreme Court has recognized, federal evidence law recognizes and accounts for the Government's legitimate need at trial "to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt." *Old Chief v. United States*, 519 U.S. 172, 187 (1997). For all the reasons above, the evidence described above is necessary to tell that story and establish the defendant's guilty. Its probative value in that regard significantly exceeds—and certainly is not substantially outweighed by—any danger of unfair prejudice.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Reed Durham*
REED DURHAM
Federal Bar No: ct29959
NATHANIEL J. GENTILE
ASSISTANT U.S. ATTORNEYS
SETH GARBARSKY

SPECIAL ASSISTANT U.S. ATTORNEY  
157 Church Street., 25th Floor  
New Haven, CT 06510  
Tel.: (203) 821-3700

## CERTIFICATION

I hereby certify a copy of the foregoing was filed electronically with the court and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Reed Durham*  
REED DURHAM  
ASSISTANT UNITED STATES ATTORNEY