```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT
_____
UNITED STATES OF AMERICA,        )
                  Plaintiff,     ) No: 3:19-cr-00299-KAD
                                 )
      v.                         ) January 15, 2021
EDWARD MICHAEL PARKS,            )
                  Defendant.     ) 2:06 p.m.
_____ )
                            Brien McMahon Federal Building
                            915 Lafayette Boulevard
                            Bridgeport, CT 06604

               STATUS/SCHEDULING CONFERENCE
           (via Zoom.gov videoconference platform)

B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.

A P P E A R A N C E S:
For the Government:
      PETER D. MARKLE, AUSA
      ANTHONY E. KAPLAN, AUSA
      NATHANIEL JOHN GENTILE, AUSA
      U.S. Attorney's Office
      157 Church Street, 25th Floor
      New Haven, CT 06510
      203-821-3700
      Email: Peter.Markle@usdoj.gov
             Anthony.Kaplan@usdoj.gov
             Nathaniel.Gentile@usdoj.gov

For the Defendant:
      TODD ALLEN BUSSERT, ESQ.
      ROBERT M. FROST, JR., ESQ.
      Frost Bussert, LLC
      350 Orange Street, Suite 100
      New Haven, CT 06511
      203-495-9790
      Email: tab@frostbussert.com
             rmf@frostbussert.com

Also present:
      EDWARD MICHAEL PARKS, Defendant
      MICHAEL SHEEHAN, ESQ.
      JOSH BANKER, ESQ., Law Clerk


Courtroom Deputy:                   Official Court Reporter:
Kristen Gould, Esq.                 Tracy L. Gow, RPR
```

1          (Zoom videoconference commences, 2:06 p.m.)

2          THE COURT:  All right.  Good afternoon, everybody.

3    This is Judge Dooley.  We are on the record in the matter of

4    *United States of America v. Edward Michael Parks*.

5          Let me ask who I have present on the video platform

6    for the Government.

7          MR. MARKLE:  On behalf of the Government, Peter

8    Markle.  Good afternoon, Your Honor.

9          THE COURT:  Good afternoon.

10          And who do I have for Mr. Parks?

11          MR. BUSSERT:  Good afternoon, Your Honor.  Todd

12    Bussert, on behalf of Mr. Parks.  Attorney Frost is available

13    by phone, and Mr. Parks is Zoomed-in from Wyatt.

14          THE COURT:  All right.  Good afternoon, Mr. Parks.

15          THE DEFENDANT:  Good afternoon to you.

16          THE COURT:  Okay.  Well, a lot has happened since we

17    last spoke in August of 2020.  At that time, the health

18    emergency, the pandemic, was hampering or impacting

19    negatively counsel's -- Defense counsel's ability to conduct

20    the mitigation investigation and collect mitigation

21    materials.  There were travel advisories and other factors

22    that were making that difficult, so at that time we thought

23    it would be a good idea to regroup in January.

24          We scheduled this status conference so we can assess

25    the situation as of this point in time.

1    I know that, unfortunately, since then, the numbers

2  have continued to go in the wrong direction and -- but before

3  I turn to you, Attorney Bussert, in that vein, there's also

4  been a lot of changes on the other side of the V since we

5  last spoke and -- with the election and now transitioning to

6  a new Attorney General.

7    Let me ask the Government -- all of our discussions

8  have been with the understanding of what the process looks

9  like when a case is eligible for the death penalty.  Does the

10  Government have any indication at this juncture as to whether

11  or not that process is going to look different or there are

12  going to be changes that impact this case, particularly in

13  terms of how we go forward?

14    MR. MARKLE:  Yes, Your Honor.  At this time, the

15  answer would be no.  We're still in contact with the Capital

16  Crimes Unit.  In fact, they have been asking or inquiring

17  when our submission will be made to them.  We have told them

18  the circumstances.

19    And I think we've -- I think Attorney Kaplan most

20  recently spoke with Attorney Bussert.  We are prepared to

21  make our submission and are still waiting for the Defense to

22  contribute to that or offer their own.  So, there is no

23  substantive change that we know of at this point.

24    THE COURT:  Okay.  All right.  So, then, let me turn

25  back to you, Attorney Bussert -- or Attorney Frost -- has the

1    -- well, I guess I'll just say, how has it been going?  You

2    were facing some hurdles then, and we had talked about --

3    well, let me back up.

4        Mr. Parks is presently serving an undischarged

5    sentence.  I think everybody agreed that it made sense to

6    sort of approach this in a very deliberative fashion so that

7    at each stage of the game -- or I shouldn't call it "a

8    game" -- at each stage of the process the information was

9    being presented in the most efficient way, so that we weren't

10    proceeding in a fashion that just didn't make sense, frankly.

11        And, so, there were a number of factors that said we

12    should wait for the Defense to get the mitigation package

13    together, to get it to the U.S. Attorney's office, and get

14    everything down to Washington and have it proceed in that

15    fashion.

16        So, I guess I would ask if there's anything that has

17    changed that that should no longer be the approach; and, if

18    not, Attorney Bussert, where are you in that process?

19        MR. BUSSERT:  So, Your Honor, I think for the

20    reasons indicated by the Court at the outset of this, things

21    have not changed materially for us, in terms of being able to

22    make meaningful progress with respect to the mitigation

23    development, and specifically with respect to access to

24    witnesses.

25        I think there's a separate issue that maybe we can

1  take up at the end that I think needs to be touched upon

2  briefly.

3         But really the heart of the issue for us is,

4  obviously, the need to conduct interviews and substantiate

5  information that we can present to the Government in support

6  of our, you know, position that death shouldn't be sought

7  here.

8         And, so, we just have been on this standstill,

9  essentially, since everything shut down, unfortunately.  And,

10  so, if I might, I mean -- and I know -- I've spoken to

11  Attorney Markle, I've spoken with Attorney Kaplan, and I

12  don't know if the Government is in complete agreement because

13  I know they have separate considerations with respect to the

14  conversations with Main Justice and the like.

15         But seeing that -- given Mr. Parks' status as a

16  sentenced prisoner, and given what we -- I don't want to

17  presume too much, but what we would expect are the demands on

18  the Court's schedule when things reopen relative to jury

19  trials and the like, this matter could be, without any risk

20  of harm or prejudice to him in terms of detention, could be

21  put off for some time.  And I've spoken to him about that,

22  and he understands and has no issue or objection to kind of a

23  "continued out for some time" trial date.

24         And if that were to be the case, if we were all in

25  agreement with respect to that, then from the Defense

1   perspective, we would think it appropriate to allow, you

2   know, further time -- and, again, realizing that what's

3   happened over the past year is through no fault of anyone's,

4   and allow us to be able to make this effort to get into kind

5   of a prior -- as was discussed with the Court before, you

6   know, initiating the traveling for some of these in-person

7   interviews before everything shut down.

8           So, you know, relative to all this is, I guess, the

9   question of vaccinations, which seem to be probably, at the

10  end of the day, the thing that is going to assure that we can

11  move forward.  My understanding is that the Court system is

12  beginning to receive vaccinations.  I understand that the

13  U.S. Attorney's Office has inquired of the state officials,

14  in terms of where -- there's some discussion of people within

15  the criminal justice system of being on the list as some type

16  of priority.  It doesn't appear maybe in the 1A or 1B group,

17  but maybe in the 1C group.

18          But I know my in-laws -- actually, my wife just

19  confirmed today that my in-laws are in the 1B group, they're

20  older, and have gotten on the schedule for vaccinations for

21  mid February.  So if we're looking at, you know, possible

22  dates that defense counsel, maybe even the Government, are

23  able to get vaccinations, assuming we're in that next group,

24  it sounds like it's going to be even later than that.

25          But, obviously, we'd like to be able to kind of put

1    ourselves in a position, and, you know, respecting and

2    appreciating the demands that the Government's facing from

3    Main Justice, and also recognizing that, per the protocols,

4    that if the Government's position -- the local office's

5    position is to recommend that they not seek the death penalty

6    here.  While we, of course, appreciate that, our concern

7    continues to be that Main Justice even under the current

8    administration --

9              (Loud audio feedback.)

10             THE COURT REPORTER:  Looks like he got --

11             MR. BUSSERT:  Looks like that person dropped off.

12             But that even under new administration, that Main

13   Justice might take a different view and want to have a

14   status --

15             MR. SHEEHAN:  Your Honor, I apologize.  That was my

16   mistake.  I was trying to hear Attorney Bussert.  But I will

17   stay off the phone.

18             THE COURT:  Okay.  Thank you, Mr. Sheehan.

19             MR. SHEEHAN:  You're welcome.

20             MR. BUSSERT:  It appears, Your Honor, that only Your

21   Honor -- the Court -- Mr. Parks, Attorney Markle, and now Mr,

22   Frost because he called in, can hear me, but all the other

23   third parties cannot hear me for some reason.  We tried

24   logging on and off multiple times.

25             But, so, just to finish that point.  To the extent

1    we were to call down to Main Justice because there was some

2    different view about, you know, recommendation, that we

3    wouldn't be prepared because we wouldn't have really the

4    offer in terms of, you know, being able to substantiate what

5    we understand to be good mitigation, but would not be able to

6    kind of confer and substantiate that with third parties.

7            THE COURT:  Okay.  So, let me back up.  You covered

8    a lot of ground there.

9            MR. BUSSERT:  Yeah.

10           THE COURT:  Did I take from that that your expert

11   was unable to travel to North Carolina to conduct the

12   interviews that you believe are appropriate and necessary to

13   your mitigation defense?

14           MR. BUSSERT:  Yes.  I mean, for the reasons

15   previously discussed in terms of -- I think the numbers

16   haven't -- never really improved enough.  And if I recall

17   correctly, the conversation with her as we were tracking

18   things along, and, in fact, North Carolina -- excuse me --

19   Massachusetts, where she resides, began to shut down fairly

20   quickly after that conversation, relative to quarantine and

21   the like.  There wasn't even a window there to go down where

22   there wouldn't be an obstacle.  And it remains the case, you

23   know, with the numbers not declining, that there are a number

24   of individuals that we would want to speak with in North

25   Carolina that have risk issues.

1          THE COURT:  Okay.  And last we spoke, the situation

2     in Rhode Island was pretty tense.  Wyatt has sort of had its

3     ups and downs in terms of concerns with the virus.

4          Have you been able to consult with Mr. Parks, either

5     by way of telephone or in-person since we last spoke, at

6     least to the extent he can help direct your mitigation

7     efforts?

8          MR. BUSSERT:  So, we've actually been able to

9     communicate with Mr. Parks via Zoom at Wyatt.  I guess

10    they're in the process of having an actual secure legal

11    system that's gonna be in place in the next couple of weeks.

12    This is separate from that.

13         And, you know, just as I would probably have

14    hesitation with any kind of -- even though when they say,

15    from Wyatt, that things aren't recorded when clients call --

16    their legal calls, there's always a bit of hesitancy there,

17    given some of the stories you hear anecdotally from different

18    counsel, and also I know clients have reservation.

19         So, we've been able to maintain contact and kind of

20    just touch base with him, but it's been more kind of general

21    discussions and more scheduling and things of the nature, and

22    not really kind of the more private and intimate kind of

23    information that we would want to discuss with him in-person

24    relative to developing the mitigation claims.

25         THE COURT:  Okay.  The second, I guess, topic I

1    think I heard you raise was the path forward at this

2    juncture.  If I heard you correctly, you were, I think, A,

3    suggesting that we push things further out from our current

4    schedule, which I think makes sense.

5            We're presently -- we have a placeholder jury

6    selection in July, and I don't think that that was ever

7    considered a likely firm date.  And given what's happened

8    with the pandemic, it has become even less so because your

9    efforts, obviously, continue to be hampered.

10           But I think what I heard you ask for is that we talk

11   about what the schedule should look like, and I think I heard

12   what sounded like, you know, these landscapes might be

13   changing.  So maybe we don't set things too firmly, but that

14   we -- you and the Government continue to assess the situation

15   in the coming weeks and months with the expectation that

16   there may be a shift in the Government's viewpoint.

17           Did I hear that correctly, Mr. Bussert?

18           MR. BUSSERT:  That's a fair characterization, yes,

19   Your Honor.

20           THE COURT:  Okay.  So let me ask, Attorney Markle,

21   what the Government would propose in terms of the path

22   forward, whether it's scheduling of dates.  I assume the

23   Government is -- recognizes that the Defendant's impediments

24   persist and are willing to accommodate, to the extent that

25   you can.  I also understand that the Government probably has

1    some competing pressures or considerations that are in

2    tension with that.

3            So, why don't I just ask you to speak to that.

4            MR. MARKLE:  Yes, Your Honor.  Well, I think that is

5    it in a nutshell, Your Honor.  We -- the Government is,

6    obviously, very cognizant of the pandemic constraints.  I

7    think we've shown a willingness to try to allow counsel as

8    much time as possible, and we're aware of the impact on the

9    judicial system and the courts.

10           So, our preference, like everyone else's, would be

11   to obtain and consider the Defense mitigation submission and

12   send it to Capital Crimes, along with our submission, all at

13   one time.

14           The problem is, with no end in sight, we do feel a

15   need to, and are prepared to, submit our death penalty memo

16   to the Capital Crimes Unit with whatever Defense counsel

17   feels they could provide within the next 30, 60 -- there's no

18   magic number, but I do think we need to have an end date

19   here.

20           We've already -- the last time I think we spoke --

21   or we spoke at one point in August, and we basically have

22   five months, understandably, but, again, with no progress

23   really to be talked about.

24           I guess I am a little bit -- I understand from

25   talking with Attorney Bussert that it, obviously, is not

1    ideal to do any of these interviews or sessions virtually, or

2    however -- you know, of course, they would rather do it

3    in-person.  It's sensitive issues.

4            But I guess I do feel -- the Government feels that

5    there could be some progress made in regards to reports,

6    medical reports, psychiatric reports, whatever kind of

7    reports there may be, that those could be obtained.  I mean,

8    all of us have worked under incredible constraints during

9    this pandemic time, but, yet, we've made some progress.

10           So, I guess that's a long way of saying that the

11   Government is not pushing for an unrealistic date, but we do

12   feel that our submission to the Capital Crimes Unit should be

13   made in, I would say no more than 90 days.  And whatever

14   counsel wants to provide, either by talking with us or in

15   terms of records or documents, we would be happy to include

16   that.

17           And, you know, I guess, though, maybe this could

18   obviate the whole need for the mitigation.  If the Capital

19   Crimes Unit decides in favor of Mr. Parks and that the death

20   penalty is not going to be authorized by the Attorney

21   General, this would all come to an end and we would be

22   talking about trial.

23           THE COURT:  Okay.

24           MR. MARKLE:  The case, that Your Honor is well

25   aware, was indicted over a year ago.  The crimes were

1    committed over five years ago.  And there are concerns that

2    the Government has of delaying trial -- delay it at this

3    point, but we would like to be in the best position to go

4    forward at the earliest date.

5          THE COURT:  Remind me again.  If we set a schedule

6    for submission to the Capital Crimes Unit by the Government

7    with or without whatever Attorney Bussert wishes to include,

8    remind me what that process looks like.  Do they work on a

9    policy timeline?

10         So, for example, they receive your submission.  Do

11   they convene within 30 days?  Do they contact the Defense and

12   solicit information within X period of time?  Is the process

13   sort of scheduled out upon arrival at the Department of

14   Justice?

15         MR. MARKLE:  I don't know of any time schedule, Your

16   Honor.  I would say, from experience, that it's usually, I

17   would say, 30 to 45 days -- maybe 30 to 60 days after a

18   submission, that it is assessed, considered, and a

19   recommendation is made by the Capital Crimes Unit to the

20   Attorney General.

21         Obviously, we're in a very transitional period of

22   time, so -- but, hopefully, things will settle by the time --

23   I'm saying 60 days from now would be our submission.  I would

24   say another 60 days for the Capital Crimes committee, and

25   that they would give Mr. Bussert and the Defense an

1    opportunity to present any submission to them, as well, with

2    probably some time constraints imposed on Attorney Bussert to

3    get that done.

4         So, it will set things in motion.  And that's not

5    optimal for the Defense, but, otherwise, I just feel as

6    though we're in this period of limbo that -- and, again,

7    we're just getting nowhere on this.

8         THE COURT:  Attorney Bussert, I tend to agree that

9    we can't have a -- sort of an indefinite pause while this

10   virus does what it's going to do and the vaccines get rolled

11   out.

12        And I do -- and I think that we should recognize, as

13   well, that we don't know what the outcome is going to be in

14   Washington, so it doesn't make sense to me to continue an

15   indefinite pause for what might -- when we don't know that

16   the recommendation or the decision of the Attorney General is

17   going to be to seek the death penalty.

18        All of this -- all of your efforts, all of this work

19   might become unnecessary if, in fact, the decision goes the

20   other way.  So, getting on a path that gets us to that

21   decision makes sense to me.

22        Let me ask you to sort of respond to the proposal

23   Attorney Markle just made.

24        MR. BUSSERT:  If I could, Your Honor, I just want to

25   clarify.  And I apologize if I wasn't more specific earlier.

1      We have, obviously, been working to obtain records

2  along the way.  The one kind of passing reference I made

3  earlier, we have confronted an issue that I think another

4  Defense team has had to present to the Court with respect to

5  certain things that are necessary, perhaps, to obtain records

6  given the agency's ordinary course of business in terms of

7  what they require.  And we'll probably be making an *ex parte*

8  application with respect to that.

9      But that being said, and looking within what we

10  had --

11      (Court reporter interruption/clarification)

12      MR. BUSSERT:  So, even with additional records, our

13  sense of things, I think, is that within the universe of

14  available documents, the heart of our mitigation case is

15  really coming from individuals who know Mr. Parks, who have

16  been part of his life; that, you know, some of this

17  information -- much of this information may not have made its

18  way into agency records and the like, or psychiatric reports,

19  or anything like that.

20      And to the extent they were in a psychiatric report,

21  let's say, the likelihood it would be similar to just

22  speaking to Mr. Parks directly, which is self-disclosure,

23  which is, again, not, you know, in doing this work, how we

24  approach it, given, you know, what experience has shown, in

25  terms of push-back from the Government, in terms of, you

1    know, if you have more to substantiate these claims, as

2    opposed to the person whose life is potentially in jeopardy

3    claiming this occurred.

4          And, so, that's obviously -- and as Your Honor is

5    probably well familiar, this type of work is expected to be

6    comprehensive and thorough, and I would assume, and I trust,

7    that no one is claiming bad faith on anyone's part here with

8    respect to the pandemic.  I mean, we've all been,

9    unfortunately, in a state of limbo, and even myself as much

10   as anyone, in terms of frustrations.

11         As the Court may be familiar, I was supposed to have

12   a trial in November, and that couldn't go forward, both to my

13   consternation and to my client's.

14         And, so, again, I don't think there's anyone at

15   fault for the pandemic and what it's brought upon, you know,

16   the system and, you know, the work that people need to do.

17   But, you know, it's simply the case that, you know, I can't,

18   and I wouldn't, begin to ask -- I wouldn't do it myself and I

19   wouldn't ask my mitigation specialist to try and obtain

20   sensitive personal information from third parties via Zoom

21   where I don't know who else is in the room.

22         You know, these are done, I mean, very discretely,

23   you know, where you can provide assurance to the individual

24   with whom you're communicating that things will be held in

25   confidence and, you know, that there's -- not to say -- I

1    mean, it happens all the time.  You go to meet with someone

2    and there's someone else present in the house, and you have

3    to find a private place to talk.

4         And while you have technology, while it's wonderful

5    to be able to see somebody, you don't know if there's someone

6    standing off-camera who is listening-in and how that impacts

7    the individual's willingness to talk about things and share.

8         And so, you know, there are inherent limitations

9    that this pandemic has created -- or, I guess, magnified.

10   And so, you know, if the Government feels -- and, you know,

11   look, Your Honor, the protocols provide that the Government

12   could have made its submission to the U.S. Attorney's Office

13   before it indicted the case.

14        I mean, as Attorney Markle points out, there are

15   period of years between the incident at issue and when the

16   Indictment was returned, and they could have made a

17   recommendation then.  And it may well be that their

18   recommendation is not to seek.  They're under no obligation

19   to disclose that to us, and I wouldn't expect that they

20   would.

21        But it remains our concern that Main -- that the

22   Government might, you know, we would hope, we cross our

23   fingers, that the Government is going to recommend not to

24   seek, regardless of what we submit, and if they maybe feel

25   more comfortable in its decision based on what we could

1    submit when that time comes.  But that whatever -- you know,

2    if they go without anything from us, that Main Justice may

3    feel differently, and then Mr. Parks -- and again, this is a

4    unique situation -- it's a capital case -- would be put in a

5    very disadvantaged position relative to this process.

6            And, again, I think we all want to try and avoid

7    potential issues down the road, having to stop, start, redo,

8    post-conviction claims or the like and so -- you know, just

9    wanting to get through this.

10           So, again, it's unfortunate.  This has really been

11   -- it's going on a lost year.  I mean, obviously, some things

12   have happened procedurally.

13           As I've indicated to the Court previously, I think I

14   have six cases now, not counting this one, that are scheduled

15   for trial once things reopen.  And, so, you know -- and that,

16   I think, is indicative of what's happening across the state,

17   across the country.  And if we're talking here -- I mean, and

18   again going to the initial point.  If, say, you know, we look

19   at Mr. Parks' situation, and he has a 2025 release date from

20   his current sentence, and we said, Well, you know -- and,

21   again, defer to the Court in terms of Your Honor's schedule.

22   But if we said, realistically, why don't we talk about a

23   summer or fall 2022 trial date, and maybe we, obviously, you

24   know, have statuses between now and then and confirm and

25   confer and what-have-you.

1          But if that was the schedule that we were talking

2    about, realistically, with respect to trial, I'm not sure I

3    understand the need to rush things here on the front end

4    relative to, you know, getting this decision made, when there

5    could be an opportunity for us to do something as soon as

6    things open up -- do it timely, get out and kind of hit the

7    pavement and do the work that's necessary.

8          And, so, with respect to that, if the Government is

9    saying, you know, We're looking to do a submission or make

10   our submission within 90 days, you know, maybe we can all

11   just collectively reconvene, you know, with Your Honor, and

12   maybe it's by phone next time, in the next 60 days and kind

13   of see where we stand with vaccination and everything else

14   and see if things materially change -- or 45 days, whatever

15   it may be.

16         But, again, I want to be clear, and I hope -- again,

17   I don't think it was the intent.  But it's not as if, you

18   know, we're in this position because this is what the Defense

19   wants.  Quite the contrary.  I've had to kind of, you know,

20   express to Mr. Parks, you know, my apologies consistently, to

21   say, you know, We wish this could be different, but this is

22   where we are.  And we're not going to put, you know,

23   particularly his family at risk by kind of barging in, let

24   alone with issues we would have to deal with personally in

25   terms of quarantine in our own personal lives.

1            He has a number of, from our perspective, critical

2    witnesses, who he's related to, who are very high-risk with

3    respect to COVID.  And, so, you know, we're just trying to do

4    the best we can.

5            THE COURT:  All right.

6            MR. MARKLE:  Your Honor -- I'm sorry, if I could

7    just say -- I don't know -- I believe Attorney Bussert

8    started off and mentioned something about bad faith and

9    fault.  And I'll just make it clear on the Government's --

10    from the Government's standpoint, Your Honor, Attorney

11    Bussert and Attorney Frost have done nothing even -- I mean,

12    there's just no -- we are not making that claim.  I don't

13    want anything I say to even suggest that.

14            I've worked with both of them.  They're incredibly

15    diligent and thorough and have been nothing than that on this

16    matter.  We know where the blame lays here.  It's on the

17    COVID pandemic.  And everyone is trying to work around that.

18            My suggestions, if I said nothing has progressed is

19    just frustration with not sort of seeking maybe some

20    less-than-ideal ways to do some of the work that needs to be

21    done.  We would like nothing more than a thorough submission.

22    And I think the Government's efforts to put this off, to

23    defer this submission, this decision, for quite a long time

24    at this point, is indicative of our desire to get whatever

25    Attorney Bussert and Attorney Frost feel we should have.

1          It's just -- as I said before, and I won't repeat at

2     length, it's just that at some point the Government feels

3     that we have to get a little bit of traction on this matter.

4          There are -- again, it's not ideal, but -- and it,

5     obviously, doesn't weigh as heavily as the rights of Mr.

6     Parks to have this decision done in a proper and thorough and

7     fair way, but there is an interest in getting some closure to

8     this case.  There is an interest of concern about witnesses

9     and availability as time goes on.

10          And as Mr. Bussert said, the Government could very

11    well have made this submission as soon as it indicted, or

12    before it even indicted.  So, our willingness to delay and

13    defer is just being pushed to its limit, and that's what I

14    was trying to voice before.

15          THE COURT:  I'll indicate that I agree with what

16    Attorney Markle said, Attorney Bussert.  I did not hear any

17    suggestion from the Government that you have been anything

18    other than completely diligent.  And I think the record

19    supports that assessment, frankly.

20          I do -- even if we are talking about a trial date

21    along the lines that you've suggested, I think there is value

22    to knowing sooner rather than later whether that is a

23    death-eligible trial or whether it is not, because that

24    really changes the runway up to that trial, the work that you

25    need to do, and where you will be focusing your energies.

1          So, I think there's value there to both the

2    Government and Mr. Parks.

3          I also accept that you do not have -- none of us has

4    a crystal ball, obviously.  But I understand why you would

5    remain skeptical that in the short term you're going to have

6    what you believe you should appropriately gather in advance

7    of making a submission either to the local U.S. Attorney's

8    Office or to the Capital Crimes Unit.

9          And I guess what we need to do here this afternoon

10   is find the middle ground that I think addresses both of

11   these very legitimate concerns.

12         What if I were to suggest that the Government hit a

13   target date of April 15th for submission of its materials to

14   the Attorney General -- or the Capital Crimes Unit?  In

15   advance of that date, Attorney Bussert and Attorney Frost,

16   you can gather that which you have, you can identify that

17   which you have not yet been able to gather and what you

18   believe it would support, and that can all go to Washington

19   together.

20         As I understand it, you will then have further time

21   to submit materials to the Capital Crimes Unit, which,

22   hopefully, will become available to you, if it hasn't already

23   by April 15th, because of the roll-out of the vaccine and

24   because -- well, we can all just hope that things start to

25   improve, so that we are -- maybe by June or July have an idea

1    of what this trial is going to look like when and

2    if it -- when it occurs.  And that's sort of one suggested

3    track.

4         What we can do, because I think there is a

5    recognition that the Department itself is in transition, and

6    we -- as we sit here, we have no idea what impact that's

7    going to be on this process or on the decisions that are

8    made -- I would schedule another status conference, a

9    telephonic, for March 15th, because we might have more

10   information on those issues at that time, which would, or

11   should, impact what I've just suggested as a schedule going

12   forward.

13        Mr. Markle, any objection to proceeding in that

14   fashion?

15        MR. MARKLE:  No, Your Honor.

16        THE COURT:  And, Mr. Bussert?

17        MR. BUSSERT:  Your Honor, I would, just for the

18   record, note our concerns, but I understand the Court's

19   position, as well.  And, you know, we'll work with that as

20   best we can and raise concerns, continuing concerns, as

21   needed.  But we'll, you know, try and do our best.

22        THE COURT:  Okay.  And, obviously, when we speak

23   again on March 15th, there may have been any number -- I

24   mean, we're living in such uncertainty these days, there

25   could have been any number of events that have transpired

1   that counsel a different course.

2          But I think, for purposes of today, I will ask the

3   Government to plan on an April 15th submission.  We will

4   schedule a March 15th or whatever -- I don't know if that's a

5   Saturday or a Sunday -- an approximately March 15th status

6   conference in advance of that submission, and we will take it

7   from there.

8          Obviously, I think with this plan we should -- we

9   should not wait until March to change our jury selection

10  date.  It's -- right now, it's set for July of 2021.

11         Let me ask -- Mr. Bussert, you had suggested Summer

12  or Fall of 2022.  Do you have a specific recommendation in

13  terms of -- well, let me back up before I ask you that.

14         The timing of the trial would seem to me to depend,

15  at least in part, on the nature of the trial.

16         Is that a fair statement, Mr. Bussert?

17         MR. BUSSERT:  It is, Your Honor.  I mean, I think if

18  we have this conversation now, under the working assumption

19  that the Government -- you know, Main Justice decides not to

20  seek the death penalty; and then if that were, for whatever

21  reason, to be a different decision, then maybe we have to

22  revisit it a bit, and maybe push out the time horizon a bit.

23         THE COURT:  Okay.  So, my suggestion would be --

24  and, again, we might be talking a placeholder, in any event

25  -- is that I push trial only so far as perhaps January 2022.

1   And, depending on what comes out of Washington, if that needs

2   to be adjusted, we can do that.  But I would rather not go,

3   at this juncture, 18 months from where we are now, or even

4   later.

5        Mr. Markle, what would be the Government's position

6   on that?

7        MR. MARKLE:  I think what Your Honor's suggesting is

8   fine with the Government.

9        THE COURT:  Mr. Bussert, any concern about at least

10   looking at January 2022, recognizing that that -- everything

11   we're trying to do is sort of dependent on a decision that

12   hasn't been made yet?

13        MR. BUSSERT:  The concerns would be twofold, Your

14   Honor, and I think they've been previously expressed -- maybe

15   not today, but in prior hearings -- which is, one, these

16   pandemic-related considerations have also impacted our fact

17   investigation, in terms of access to the community and things

18   of that nature, and, you know, being able to meet with

19   potential witnesses.

20        And then, two, as I did indicate today, but I've

21   indicated previously, I do have a number of matters on the

22   trial list -- one in federal court and the remainder in the

23   state -- and I think each of those cases -- I think every one

24   of them -- predates, in terms of the defendant being charged.

25   And any number of them just being in pretrial custody and not

1    being sentenced prisoners, and all having a very strong

2    interest to proceed to trial at the earliest possible date.

3            THE COURT:  Okay.  I think that those are the types

4    of concerns that really -- it's so hard to sort of do all

5    of -- address those types of concerns so far in advance when

6    there are so many contingencies and unknowables.

7            I think that as we -- we're obviously going to talk

8    on any number of occasions between now and whatever jury

9    selection date is set.  And I think as events unfold, the

10   parties are free to discuss at each and every one of those

11   how we're doing, how we're doing on investigation, how we're

12   doing on trial prep, how are we doing on witnesses.

13           Nothing I'm doing is set in stone.  I'm just not

14   comfortable going so far out at this juncture, given the

15   number of contingencies at play.

16           So, subject to -- you know, there's a lot of

17   asterisks on what we're doing, and there will continue to be.

18   But I think I will continue jury selection out to January of

19   2022, and we will have our next status conference on March

20   15th.  And my guess, we'll have status conferences every 90

21   days thereafter, until we know what this trial is going to

22   look like and when it can reasonably and predictably be held.

23           Does that seem like a plan, Mr. Bussert?

24           MR. BUSSERT:  It does, Your Honor.

25           THE COURT:  And, Mr. Markle?

1          MR. MARKLE:  Yes, Your Honor.

2          THE COURT:  Okay.

3          MR. MARKLE:  Your Honor, one thing I just -- I'm not

4    sure if Your Honor was done.  I just -- before we end, I just

5    wanted to make sure that if our submission is going to go on

6    April 15th, or thereabouts, that if Attorney Bussert and

7    Attorney Frost feel that there's anything they want to or

8    need to have us consider in regards to that -- I'm not saying

9    they have to, but if they decide there is, I would just ask,

10   through Your Honor, that that be given to our office by April

11   1st, so that we can make an assessment and include that.

12         THE COURT:  All right.  That seems a reasonable

13   request.

14         Obviously, it's entirely up to you, Attorney Bussert

15   and Attorney Frost, but that does seem like a reasonable

16   deadline for submission.

17         Any concerns about that?

18         MR. BUSSERT:  No, Your Honor.  Again, I mean,

19   previous issues and also -- I mean, experience suggests that

20   if we get to that date and it looks like we need a week here

21   or there, that the parties can submit something to the Court,

22   you know, by agreement, so that we are all kind of on the

23   same page.

24         THE COURT:  Okay.  All right.

25         MR. MARKLE:  Thank you.

1          THE COURT:  And on that issue, let me take a

2     moment -- you know, these are obviously significant and

3     difficult cases, and the Court appreciates the

4     professionalism and civility with which all the lawyers are

5     working cooperatively to make this process fair and

6     appropriate, so --

7          All right.  I don't have anything else on my agenda

8     for this afternoon.

9          Anything the Government wanted to bring to my

10    attention?

11         MR. MARKLE:  No, Your Honor.  Thank you.

12         THE COURT:  All right.  Anything for Mr. Parks,

13    Mr. Bussert?

14         MR. BUSSERT:  Just briefly, Your Honor, and I'm not

15    expecting any kind of firm decision or announcement at this

16    point.  But, you know, one of the issues, that Your Honor may

17    recall from the arraignment or the initial appearance, was

18    the protective order that was put in place with respect to a

19    large portion of the discovery.

20         And experience suggests that that generally lifts

21    when there's a jury selection date or trial date firm, right,

22    and we have a window of time that we can work back from

23    relative to the client having access to it.

24         I did speak briefly with Attorney Kaplan about this

25    issue, and he said -- and, again, not surprising, but -- that

1   the Government's position would be that the protective order

2   should remain in place for the time being.  And I don't

3   know -- again, you know, from the Defense perspective,

4   obviously, you know, all this time, even though Mr. Parks is,

5   you know, at Wyatt and we don't have a lot of direct contact,

6   I mean, there are computers and, you know, he has access to

7   nonprotected material.

8        But the more he can review and can aid our Defense

9   process, I don't know if that's an issue for a different day

10  or if the Court, you know, has any kind of general feelings.

11       I know Your Honor has kind of wanted to preserve

12  that issue for a later point from when we first took it up,

13  and maybe that -- we revisit it again in March.

14       But there's obviously, from the Defense perspective,

15  and perhaps -- I mean, I think it's probably fair to say we

16  don't -- while we understand the nature of the Government's

17  concerns, we don't necessarily share in those concerns, in

18  terms of the risks that it cites relative to Mr. Parks.

19       THE COURT:  All right.  I think on that issue -- and

20  you can correct me if my memory is wrong -- the Government

21  had suggested that it be lifted 30 days in advance of a firm

22  trial date.  And I think I had indicated at the time that

23  that seemed to me to be too narrow an issue -- too narrow a

24  window for purposes of the run-up to trial, but that I would

25  revisit it when we knew what that date was and we could work

1   backwards from it, a reasonable period of time, to allow

2   Mr. Parks access to the materials.

3         I don't think setting what is likely a placeholder

4   in January triggers that moment, for purposes of making that

5   decision, Mr. Bussert, especially since I think what I've

6   heard you say is that you would, in all likelihood, be

7   seeking a trial date beyond that.

8         So, I think -- so, I guess I would say you,

9   obviously, can raise this issue at any point when you -- by

10  motion or otherwise.  But it would not -- it was not my plan

11  to revisit it this far in advance of the jury selection date,

12  especially since the jury selection date could very well be

13  moved again.

14        Having said that, if the Government -- you're free

15  to talk to the Government.  And if there's an agreement

16  between the parties that at a point that protective order

17  should lift on your own, I, obviously, will accommodate

18  whatever agreement might be reached.

19        And I don't know whether this is something Attorney

20  Kaplan would speak to or Attorney Markle.

21        MR. MARKLE:  I think -- I mean, I can speak to it,

22  Your Honor.  Mr. Bussert -- Attorney Bussert raised this with

23  Attorney Kaplan.  I know it was discussed.  We will -- we're

24  sensitive to the need of counsel, once again.

25        But I think we're, in keeping with Your Honor, that

1  this -- we have a, quote/unquote, firm trial date, but it

2  really is very unfirm.  And as we begin to see some progress

3  made, whether it's March or shortly after the April

4  submission, then we will certainly talk again with Attorney

5  Bussert and Attorney Frost and see what can be provided while

6  we juggle the need to turn it over versus the risk to anyone

7  who's exposed.

8          So, a long way of saying, the Government is

9  sensitive to it.  It understands that Your Honor does not

10  feel that the 30 days in advance is adequate, and we will do

11  our best to turn that -- those materials over well in advance

12  of 30 days once we know what the 30 days -- whatever that

13  date is that we're working against.

14          THE COURT:  Okay.  All right.  So I think, Attorney

15  Bussert, that is the -- at this juncture, anyway, I'm not

16  inclined to revisit the issue.  As things unfold, if there

17  are -- if there is reason that you'd like me to do so sooner

18  than I might have otherwise indicated I will, by all means,

19  let me know.

20          MR. BUSSERT:  And I would just note for the

21  record -- I think Attorney Markle might want to, as well --

22  but I think he said "turn over the material."  I think he

23  means allow Mr. Parks to have access to the material, because

24  the Government has made disclosures to the Defense with

25  respect to the protected material.

 1          MR. MARKLE:  Yes.  I'm sorry.  Thank you.

 2          MR. BUSSERT:  Point of clarity.

 3          THE COURT:  Okay.  All right.  So, is there anything

 4   else we can do this afternoon, from the Government's

 5   perspective?

 6          MR. MARKLE:  No.  Thank you, Your Honor.

 7          THE COURT:  And, Attorney Bussert.

 8          MR. BUSSERT:  That's all, Your Honor.  Thank you.

 9          THE COURT:  Okay.  All right.  Everybody, we will

10   speak to you again on March -- around March 15th.  We'll get

11   that scheduled this afternoon.  And in the meantime,

12   everybody please stay safe.

13          MR. MARKLE:  Thank you, Your Honor.

14          MR. BUSSERT:  Thank you.

15          (Zoom videoconference concludes, 2:55 p.m.)

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2                        RE: *U.S. v. Edward Michael Parks*
                            Criminal No. 3:19-cr-00299-KAD
3

4                          Status/Scheduling Conference
                        (via Zoom.gov videoconference platform)
5                               January 15, 2021

6

7        I, Tracy L. Gow, RPR, Official Court Reporter for the

8    United States District Court, District of Connecticut, do

9    hereby certify that the foregoing pages, 1 through 32, are a

10   true and accurate transcription of my shorthand notes taken

11   in the aforementioned matter, to the best of my skill and

12   ability.

13

14                       /s/  TRACY L. GOW
                         Official Court Reporter
15                       U.S. District Court
                         915 Lafayette Boulevard, Room 216
16                       Bridgeport, Connecticut 06604
                         (203) 910-0323
17

18

19

20

21

22

23

24

25